NOT FOR PUBLICATION

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| **ELITE PERSONNEL, INC.,**<br>**Plaintiff,**<br>**v.**<br>**PEOPLELINK, LLC,**<br>**Defendant.** | **Civil Action No. 15-1173**<br><br>**OPINION** |

JOSE L. LINARES, U.S.D.J.

This matter comes before the Court upon motion by Defendant, PeopleLink, LLC, to dismiss the Complaint (the "Motion to Dismiss"). (ECF No. 11). Pursuant to Rule 78 of the Federal Rules of Civil Procedure, no oral argument was heard. Upon consideration of the Parties' submissions, and for the reasons stated below, Defendant's Motion to Dismiss, (ECF No. 11), is **granted in part and denied in part**.

## I. BACKGROUND[1]

This is an action for breach of contract against Defendant arising out of a breach of its contractual obligations to Plaintiff under an asset purchase agreement and promissory note. (Complaint, ECF No. 1, ¶1). In August 2012, Plaintiff, Elite Personnel, Inc., and Defendant, PeopleLink entered into an Asset Purchase Agreement (the "APA") pursuant to which Elite sold

[1] The facts are taken primarily from Plaintiff's Complaint, (ECF No. 1), and are properly accepted as true for the purposes of this Opinion.

all of its assets, properties and rights related to Plaintiff's business (the "Purchased Assets") to Defendant for $6,400,000.00 (the "Purchase Price"). (Id. ¶11). Plaintiff's business consisted of providing temporary staffing services, including, but not limited to, temporary hire, temp-to-direct hire, and direct hire, managed service and longterm staffing services, recruiting and placement services, background checking services and skills assessment services primarily throughout the State of New Jersey, and also in the States of New York and Pennsylvania ("Plaintiff's Business"). (Id. ¶12). Defendant was required to pay $3,880,000.00 of the Purchase Price in cash at closing while the remaining $2,520,000.00 of the Purchase Price was evidenced by a promissory note delivered by Defendant to Plaintiff in the principal amount of $2,520,000, which required Defendant to pay the $2,520,000.00, plus interest at a rate of three percent (3%) per annum, in eight equal quarterly installment payments of $315,000.00 (the "Promissory Note"). (Id. ¶¶13-14). The first seven of these eight payments were made by Defendant. The eighth payment remains outstanding and is one issue of this litigation.

Pursuant to Section 2.02(b) of the APA, the principal amount due under the Promissory Note would be reduced in the event certain business targets were not reached by Defendant after execution of the APA. Specifically:

> [t]he principal amount of the Note will be reduced, as of the end of each Measurement Period (as defined below), by an amount equal to sixty percent (60%) of any amount by which the Margin (as defined below) for the Business as billed by Buyer during each of two (2) twelve-month Measurement Periods (as defined below) following the Closing is less than ninety-five (95%) of the Target Margin for the corresponding twelve-month period. For purposes of this Agreement . . . (ii) "Measurement Period" will mean the twelve month period beginning each October 1 and ending September 30 of the next calendar year; (iii) "Target Margin" will mean: (a) as it relates to Measurement Period ending on September 30, 2013, Two Million Four Hundred Thousand Dollars ($2,400,000.00); (b) as it relates to the Measurement Period ending September 30, 2014, Two

> Million Five Hundred Twenty-Eight Thousand Dollars ($2,528,000.00).

(Id. ¶17). Further, as a condition of permitting any reduction of the amount due under the Promissory Note as a result of Defendant's failure to reach the business targets, it was agreed that Defendant would not substantially change the operating methods by which Plaintiff had conducted its Business prior to execution of the APA. This was memorialized by Defendant's representation and agreement in the APA that it had "all requisite power and authority to own, lease, and operate properties used by the Business, to carry on the Business (as presently being conducted)" (see Ex. A, § 3.01) and that it would "not substantially change the compensation of any employee that was employed by [Plaintiff] at the time of Closing without the consent of [Plaintiff]." (Id. ¶18). In addition, Defendant could seek an adjustment of the Promissory Note in the event it believed it had not reached its target margin only if it provided Plaintiff with written notice of the proposed adjustment "not less than thirty (30) days prior to the date on which the applicable quarterly payment of the Note is due and payable[.]" (Id. ¶19). The relevant measurement period for the Seventh Installment (due on November 25, 2014) and the Eighth Installment (due on February 25, 2015) was the period that began on October 1, 2013 and ended September 30, 2014 (the "Second Measurement Period"). (Id. ¶20).

Not until December 8, 2014, did Defendant advise Plaintiff for the first time that it had purportedly failed to reach its target margin for the Second Measurement Period and that, accordingly, the principal balance of the Promissory Note should be reduced by $467,800.15 (the "December 8, 2014 Notice"). Defendant therefore advised Plaintiff that it would reduce the amount due under the Eighth Installment to $0. (Id. ¶24). Plaintiff's Complaint therefore claims that Defendant remains obligated to pay the full amount of the Eighth Installment of $315,000.00 that is due on February 25, 2015. (Id. ¶28). In addition, after execution of the APA, Defendant

substantially changed the operating methods of Plaintiff's Business by substantially changing the compensation of Plaintiff's former employees (now PeopleLink's employees) without Plaintiff's consent, which in turn substantially reduced the employees' productivity. (Id. ¶29). As such, if Defendant did not reach the target margin for the Second Measurement Period, Plaintiff claims it was solely due to Defendant's unilateral substantial change in the operating methods of Elite's Business. (Id. ¶30). In lieu of filing an answer, Defendant moved to dismiss Plaintiff's Complaint claiming notice was timely under the APA and Plaintiff's claims for breach of implied covenant of good faith and fair dealing must be dismissed. Plaintiff opposes only the former of Defendant's arguments.

## II. LEGAL STANDARD

For a complaint to survive dismissal, it "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Ashcroft v. Iqbal*, 556 U.S. 62, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). In determining the sufficiency of a complaint, the Court must accept all well-pleaded factual allegations in the complaint as true and draw all reasonable inferences in favor of the non-moving party. *See Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008). Additionally, in evaluating a plaintiff's claims, generally "a court looks only to the facts alleged in the complaint and its attachments without reference to other parts of the record." *Jordan v. Fox, Rothschild, O'Brien & Frankel,* 20 F.3d 1250, 1261 (3d Cir. 1994).

## III. DISCUSSION

Defendant's Motion to Dismiss is premised on three arguments. First, Defendant claims that because notice was provided more than thirty days before the due date of the quarterly payment, this notice was timely under the APA and there was no breach of contract in this regard.

(Brief, ECF No. 11-1 at 6). Second, Defendant argues that Plaintiff's claim for breach of the implied covenant of good faith and fair dealing should be dismissed because it is duplicative of the breach of contract claim and has nonetheless, failed to be sufficiently plead. (Id. at 7). Lastly, Defendant claims that the parties agreed to a binding alternative dispute resolution[2] mechanism under the express terms of the APA and therefore this provision should be enforced. (Id. at 12). For the reasons that follow, the Court grants Defendant's Motion as to Plaintiff's claim for breach of the implied covenant of good faith and fair dealing only.

The Court first notes that Defendant and Plaintiff hotly dispute whether or not Defendant provided timely notice under the APA. By the terms of the APA, Defendant could seek an adjustment of the Promissory Note in the event it believed it had not reached its target margin only if it provided Plaintiff with written notice of the proposed adjustment "not less than thirty (30) days *prior to the date on which the applicable quarterly payment of the Note is due* and payable[.]" (emphasis added) (Id. ¶19). It appears that the relevant measurement period for the Eighth Installment (due on February 25, 2015) was the period that began on October 1, 2013 and ended September 30, 2014. Defendant did not provide written notice to Plaintiff until December 8, 2014, so this argument fails. In any event, this is a question of fact which is not appropriately tackled at the motion to dismiss stage.

Further, as a condition of permitting any reduction of the amount due under the Promissory Note as a result of Defendant's failure to reach the business targets, it was agreed that Defendant would not substantially change the operating methods by which Plaintiff had conducted its business prior to execution of the APA. This was memorialized by Defendant's representation

---

[2] The Court notes that such provision refers only to adjustment of the payments by Defendant, not to any breach of contract as to employees' compensations.

and agreement in the APA that it had "all requisite power and authority to own, lease, and operate properties used by the Business, to carry on the Business (as presently being conducted)" (see Ex. A, § 3.01) and that it would "not substantially change the compensation of any employee that was employed by [Plaintiff] at the time of Closing without the consent of [Plaintiff]." (Id. ¶18). Plaintiff properly alleges that Defendant breached this provision of the APA by altering employees' compensations. With this allegation in mind, and it being clear that such is not the subject of binding alternative dispute resolution, the Court will not dismiss Plaintiff's breach of contract claim.

However, the Court (and Plaintiff) agrees that Plaintiff's claim for breach of implied covenant of good faith and fair dealing should be dismissed. Although, under New Jersey law, every contract contains an implied covenant of good faith and fair dealing, *see Atl. City Racing Ass'n v. Sonic Fin. Corp.*, 90 F. Supp. 2d 497, 510 (D.N.J. 2000), courts have repeatedly recognized that "a plaintiff cannot maintain a claim for breach of the implied covenant of good faith and fair dealing when the conduct at issue is governed by the terms of an express contract or the cause of action arises out of the same conduct underlying the alleged breach of contract," *Hahn v. OnBoard LLC*, No. 09-3639, 2009 U.S. Dist. LEXIS 107606, at *15 (D.N.J. Nov. 16, 2009) (citing *Wade v. Kessler Inst.*, 172 N.J. 327, 339 (2002)). Plaintiff's claims for breach of the covenant of good faith and fair dealing are governed by the express terms of the APA and Note and they arise out of the same conduct underlying Plaintiff's claims for breach of that agreement. Thus, Plaintiff shall not be permitted to maintain separate claims for breach of the implied covenant of good faith and fair dealing with regard to the APA and the Note, as they are duplicative of the claims for direct breaches of those agreements. Plaintiff does not deny this point and thus, the Court dismisses Plaintiff's claims for breach of implied covenant of good faith and fair dealing.

## IV. CONCLUSION

For the reasons stated above, Defendant's Motion to Dismiss, (ECF No. 11), is **granted in part and denied in part**. An appropriate order accompanies this Opinion.

JOSE L. LINARES, U.S.D.J.

May 26 2015